# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| SAXON INNOVATIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>APPLE, INC.; GATEWAY, INC.; GATEWAY COMPANIES, INC.; ACER AMERICA CORP.; ACER, INC.; HEWLETT-PACKARD CO.; DELL, INC.; ASUS COMPUTER INTERNATIONAL, INC.<br><br>        Defendants. | Civil Action No. 6:08-CV-00265-LED |

## INTEL CORPORATION'S UNOPPOSED MOTION TO INTERVENE AND SUPPORTING MEMORANDUM

Pursuant to Federal Rule of Civil Procedure 24, Intel Corporation moves to intervene as a defendant and counterclaimant in this patent infringement action filed by Plaintiff Saxon Innovations, LLC against several of Intel's largest customers. Saxon does not oppose Intel's intervention, nor do any of the defendants who have appeared in the case.

Intel seeks to intervene in this case because four of the five patents Saxon has asserted against Intel's customers relate to microprocessors, chipsets, and/or wireless interface semiconductor products. Intel is a major supplier of these types of semiconductor products to each of the defendants, who incorporate them into the computer products they sell. Saxon's assertions that the defendants' Intel-based computer products infringe its patents are tantamount to allegations that Intel's products infringe its patents. Thus, Intel has a direct and substantial interest in defeating Saxon's infringement claims. Intel also has a direct financial interest in the outcome of this case because three of the six defendant groups have demanded that Intel

indemnify and defend them with respect to Saxon's claims against their products that use Intel semiconductors, and Intel has agreed to do so.

Intel believes that its participation as a party in this case will benefit the Court and the existing parties. As the designer of the semiconductor products that are at the heart of Saxon's claims, Intel will be able to ensure that the most accurate information about the design and operation of its products is presented to the fact-finder. Also, Intel believes that its products are licensed under the Saxon patents by virtue of Intel's patent cross-license with AMD, the original owner of the Saxon patents. Intel believes that it is the party best situated to present this license defense.

As evidenced by their non-opposition, granting the motion will not prejudice Saxon or the defendants. Indeed, Intel is filing its motion to intervene several weeks before the served defendants are due to respond to the First Amended Complaint. Denying this motion, however, will greatly prejudice Intel because its products could be found to infringe and to be unlicensed without Intel itself, the real party in interest, having had the opportunity to litigate these issues. To be sure, the defendants are large and sophisticated companies and will be represented by able counsel, but given Intel's unique technical knowledge regarding its own products and its license with AMD, Intel is in the best position to present a substantive and vigorous defense to Saxon's allegations of infringement as they relate to Intel's products.

Accordingly, Intel should be granted leave to intervene as of right under Rule 24(a); alternatively, the Court should allow Intel to intervene permissively under Rule 24(b). Intel's proposed Complaint in Intervention is filed concurrently on today's date.

I.      **FACTUAL BACKGROUND**

　　　　A.      **Saxon's Lawsuit Accuses Intel Customers of Infringement.**

Saxon filed its Complaint in this action on June 26, 2008, accusing Apple, Inc., Gateway, Inc., Gateway Companies, Inc., Acer America Corp., Acer, Inc., Hewlett-Packard Co., and Dell, Inc. of selling computer products that infringe from two to four patents (depending on the defendant). On August 21, 2008, Saxon filed a First Amended Complaint that added ASUS Computer International, Inc., as a defendant, and asserted an additional patent.

Saxon's First Amended Complaint accuses all defendants of infringing two patents: U.S. Patent No. 5,592,555, entitled "Wireless Communications Privacy Method and System" ("the '555 patent"); and U.S. Patent No. 5,502,689, entitled "Clock Generator Capable of Shut-Down Mode and Clock Generation Method" ("the '689 patent"). Saxon further accuses Apple, Dell, Hewlett-Packard, Acer, and ASUS of infringing U.S. Patent No. 5,530,597, entitled "Apparatus and Method for Disabling Interrupt Masks in Processors or the Like" ("the '597 patent"). Additionally, Saxon accuses Apple, Dell, Hewlett-Packard and ASUS of infringing U.S. Patent No. 5,247,621, entitled "System and Method for Processor Bus Use" ("the '621 patent"). Finally, Saxon accuses only one defendant—Hewlett-Packard—of infringing U.S. Patent No. 5,235,635, entitled "Keypad Monitor with Keypad Activity-Based Activation" ("the '635 patent").

The Court granted the original defendants' unopposed motions for extensions of time to September 19, 2008, to answer or otherwise respond to Saxon's original Complaint. [Dkt. Nos. 35, 37, 38, 40, 42] Immediately after the Court granted the last of those motions, Saxon filed its First Amended Complaint. [Dkt. No. 43] The Court has granted the motions of the served defendants for an extension of time to October 20, 2008, to answer or otherwise respond to the

First Amended Complaint. [Dkt. Nos. 50-57][1] Obviously, no docket control order has been entered in this case, and discovery has not commenced.

### B.   The Products Intel Sells to the Defendant Computer Makers Are Implicated by Saxon's Complaint.

Intel manufactures and sells three types of semiconductor products that are relevant to this action: (1) microprocessors, which are the central processing units or "brains" of computer systems that process system data and control other devices in the systems; (2) chipsets, which operate as the "nervous system" of computers, controlling access between the microprocessor and the computer's main memory, performing essential logic functions, such as balancing the performance of the system and removing bottlenecks, and sending data between the microprocessor and input (keyboard, mouse), display (monitor), and storage devices (such as CD and DVD drives); and (3) wireless interface products, which allow computers to connect and communicate wirelessly to networks and the Internet.

Each of the defendants in this case is a significant Intel customer and purchases microprocessors, chipsets, and wireless interface products from Intel and incorporates them into the computers that they manufacture and sell. Indeed, in 2007, Dell accounted for eighteen percent of Intel's net revenue and Hewlett-Packard accounted for seventeen percent of Intel's net revenue. [Ex. A. (Intel 2007 10K) at 9] And, although Intel can confidently assert, based on analysis to date, that its products do not infringe the Saxon patents, it appears clear that the '689, '597, and '621 patents are directed to microprocessor and chipset circuitry and functions, and that many claims of the '555 patent are directed to circuitry within a wireless interface chip.[2]

---

[1] No return of service for ASUS, a Taiwanese company, has been filed with the Clerk as of the date of the filing of this motion. Thus, Intel does not know when ASUS will appear or respond to the First Amended Complaint.

[2] The '635 patent, which is asserted only against Hewlett-Packard, does not appear to

### C. Intel Has Agreed to Indemnify Three Defendant Groups with Respect to Their Intel-Based Products.

Since Saxon filed its lawsuit, three of the defendant groups have demanded that Intel indemnify, defend, and hold them harmless from Saxon's claims in the action, based on the terms of the intellectual property indemnity granted by Intel to those defendants in connection with their purchases of products from Intel. Based on the nature of the claims of the Saxon patents, Intel has agreed to defend and indemnify these defendants.

### D. Intel Is Licensed to the Saxon Patents.

The patents that Saxon is asserting against Intel's customers were originally issued to Advanced Micro Devices, Inc., in the 1990s. [*See* Amended Complaint, Exhibits A-E] In 2000, AMD spun-off its communications chip division and, as part of that transaction, assigned these patents (along with other AMD patents) to the spin-off entity, Legerity, Inc. In July 2007, Legerity was acquired by Zarlink, Inc., and, as part of that transaction, the former AMD patents owned by Legerity were sold and assigned to Saxon. Saxon is an entity created in 2007 by Altitude Capital Partners, a New York investment firm, to hold and enforce the former AMD patents.

Intel is licensed under each of the asserted Saxon patents pursuant to a 1996 Patent Cross License Agreement between Intel and AMD. [Ex. B (public, redacted version of agreement)] Under the 1996 Agreement, Intel has a perpetual, royalty-free license to make and sell Intel products that practice any and all patents that AMD "owned or controlled" at any time between January 1, 1996 and December 31, 2000. Three of the five patents Saxon has asserted against Intel's customers, the '555, '698, and '597, were issued to AMD—and, thus, "owned or controlled" by AMD—during this period. The other two patents, the '621 and '635, were issued

---

relate to any Intel products. Accordingly, at this point, Intel does not seek to intervene with respect to Saxon's infringement allegations against HP on the '635 patent.

to AMD in 1993, but AMD continued to own or control them into the period covered by the 1996 Agreement.[3]  And, under the 1996 Agreement, Intel remains licensed to these patents irrespective of AMD's 2000 assignment of them to Legerity and Legerity's 2007 assignment of them to Saxon.  Accordingly, the microprocessor, chipset, and wireless products that Intel sells to the defendants are likewise licensed under the asserted Saxon patents.  Saxon's rights in these patents are also exhausted by Intel's sales of products licensed under the patents.  *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. ---, 128 S. Ct. 2109 (2008).

Upon learning of Saxon's suit against its customers, Intel sent a letter to Saxon, advising Saxon that Intel's products and its customers' Intel-based products are licensed under the Saxon patents and requesting that Saxon dismiss its Complaint or at least amend it to expressly state that Saxon is not asserting infringement based on the defendants' manufacture or sale of computers that contain licensed Intel components.  Intel also advised Saxon that if it did not do so, Intel intended to intervene in the case to protect its and its customers' interests.  Saxon has not provided a substantive response to Intel's letter, but, as noted above, has informed Intel that it does not oppose Intel's intervention.  If the Court permits Intel to intervene, Intel intends to bring a summary judgment motion on the license and exhaustion issues at an early date.

## II.     ARGUMENT

Intel is entitled to intervene in this case as a matter of right under Rule 24(a), or as a matter of discretion under Rule 24(b).

---

[3] Intel is also licensed to these two patents under a similar 1976 patent cross-license agreement between Intel and AMD.  Again, however, the '635 patent, asserted against Hewlett-Packard only, does not appear to relate to any Intel products, and is not part of Intel's Complaint in Intervention.

### A.     Intel Is Entitled to Intervene as a Matter of Right Pursuant to Rule 24(a).

The Fifth Circuit has interpreted Rule 24(a) to require proof of four elements for a party to intervene as a matter of right: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (*en banc*) (*quoting New Orleans Pub. Serv. Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). "[T]he inquiry under subsection (a)(2) is a flexible one . . . [and] must be measured by a practical rather than technical yardstick." *Edwards*, 78 F.3d at 999 (internal quotation marks omitted). Generally speaking, "federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Doe v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (internal quotation marks omitted); *see also Thurmond v. Compaq Computer Corp.*, 2000 U.S. Dist. LEXIS 20893, at *4 (E.D. Tex. June 26, 2000) (Rule 24(a) should be "construed broadly, in favor of the applicant[] for intervention" (internal quotation marks omitted)). In this case, Intel's request to intervene easily satisfies each of the four elements of Rule 24(a).

#### 1.     Intel's Motion to Intervene Is Timely.

Intel's motion to intervene is unquestionably timely.  Indeed, Intel files this motion at the earliest stage of the litigation, several weeks before the served defendants' responses to the First Amended Complaint are due and prior to the entry of any docket control order in the case. Intel's intervention at this early stage of the case will not cause any delay in the case and will not prejudice Saxon or the defendants—as evidenced by their non-opposition to Intel's motion.

### 2.   Intel Has a Compelling Interest in the Property and Transactions That Are the Subject of This Litigation.

A party is entitled to intervene as of right in an action where it has a "direct, substantial, legally protectable interest in the proceedings." *Edwards*, 78 F.3d at 1004 (internal quotation marks omitted).  Here, Intel has two interests to protect in seeking to intervene.

First, as a major supplier to the defendants of the products that are at the center of Saxon's infringement allegations, Intel has a compelling interest in defending against and defeating Saxon's infringement contentions as to its products.  In such circumstances, courts routinely permit suppliers to intervene to defend and protect their own interests.  *See, e.g.*, *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1935) (finding manufacturer's intervention in patent infringement action against its customers was "necessary for the protection of its interest"); *Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335, 1344 (Fed. Cir. 2006) ("[T]o the extent that [the interests of the manufacturer of allegedly infringing products] may be impaired by the Texas litigation, [the manufacturer] may seek to intervene in that litigation."); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. 04-1337, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (granting intervention of right in patent infringement suit: "manufacturer of the product component which is at the heart of these cases . . . has a compelling interest"); *IBM Corp. v. Conner Peripherals, Inc.*, No. 93-20117, 1994 WL 706208, at *5 (N.D. Cal. Dec. 13, 1994) (granting motion to intervene as of right:  "To the extent [intervener manufacturer's] products are implicated by IBM's infringement claims, [manufacturer] has a direct interest in the subject matter of the action").

Second, as the indemnitor of several of the defendants with respect to their purchase and use of Intel products, Intel has a compelling legal interest in ensuring that the best possible

defense of the case is presented. Court have routinely permitted indemnitors to intervene in patent infringement suits against their indemnitees. *See, e.g., Tegic Commc'ns*, 458 F.3d at 1344 (explaining that manufacturer should seek to intervene in patent infringement suit against customer, based in part on duty to indemnify); *Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 765 (2006) (granting manufacturer's intervention of right in patent suit, holding indemnification and potential for later suit "more than satisfies a direct and immediate interest"); *IBM*, 1994 WL 706208, at *5 (granting manufacturer intervention of right in patent suit, based in part on "indemnity claim" for disk drive controllers incorporated into customer's disk drives); *Sw. Bell Tel., L.P. v. Arthur Collins, Inc.*, 454 F. Supp. 2d 600, 602 (N.D. Tex. 2006) (in patent suit, noting manufacturer was granted the right to intervene based in part on "potential indemnity obligations" to customer).

### 3. Intel's Ability to Protect Its Interests Will Be Impaired If It Is Not Allowed to Intervene.

As the Federal Circuit has observed, "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *see also Honeywell Int'l*, 2005 WL 2465898, at *4 (finding that a manufacturer's claims in patent suit "will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known."). Intel's interest could be impaired in several ways if it is not permitted to intervene.

First, Saxon is seeking injunctive relief, and such relief would directly impact Intel as a major supplier to the defendants. A judgment in Saxon's favor may also have a broad chilling effect on the market for Intel's products beyond the customers that are defendants in this case. Conversely, if Intel is not a party, and the defendants' accused products that incorporate Intel

products are found not to infringe, the judgment may apply only to the defendants' products, rather than providing a broad ruling that Intel's products do not infringe regardless of the manufacturer of the computer in which they are installed. In this regard, Intel's proposed Complaint in Intervention seeks, among other things, a declaration that Intel's products, as sold by Intel, do not infringe and are licensed.

Second, as discussed above, Intel has agreed to indemnify several of the defendants with respect to their products that use Intel components. Given the high cost of defending a patent case, and the damages potentially at issue, Intel should be given the opportunity to protect its sizeable interest in the case firsthand.

Third, if not allowed to intervene here, Intel may be forced to take a piecemeal approach to defending its customers, either by filing its own action or seeking to intervene elsewhere when the same plaintiff sues more of Intel's customers. Thus, in the interest of preserving the resources of both the courts and the parties, Intel should be allowed to intervene in order to protect its products, technology, and customers.

### 4. The Defendants May Not Adequately Represent Intel's Interest in Defending Against Saxon's Patent Infringement Allegations.

Intel also should be allowed to intervene because the defendants may not adequately represent Intel's interests. The burden of showing inadequate representation by current parties is "minimal." *Edwards*, 78 F.3d at 1005. The applicant need only show "that representation . . . *may* be inadequate." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) (emphasis added).

While Intel and the defendants share an interest in defending against Saxon's infringement allegations, the impact of failing to defend against these charges, at least with respect to Intel's products, is significantly less on defendants than it is on Intel. Intel may be

required to indemnify several defendants for their losses. Meanwhile, defendants can purchase products from other suppliers, and may have less incentive to see the litigation through to a resolution favorable to Intel and its products, especially if indemnified. It is clear that no entity has a greater incentive to prove Intel's products do not infringe than Intel itself. Intel is in the best position to present a more substantive and "vigorous" defense to Saxon's charge of infringement as it relates to Intel's products.

Moreover, the customer-defendants may not be able to defend as vigorously as Intel because they do not have the same depth of understanding of Intel's technology and thus may not be in a position to assert all non-infringement and invalidity defenses applicable to Intel's products. *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004) (holding customer defendants were inadequate representatives of manufacturer's interests because they may lack manufacturer's "very high, even unique, level of expertise" concerning design and manufacture of product).

Accordingly, the Court should grant Intel's timely motion to intervene as of right because Intel is entitled to protect its interests both as the manufacturer and as the potential indemnitor of products at issue in this litigation.

B.   **In The Alternative, Intel Should Be Permitted to Intervene Pursuant to Rule 24(b).**

Although Intel has demonstrated that it is entitled to intervene as of right, in the alternative, Intel moves for leave to intervene permissively pursuant to Rule 24(b). Rule 24(b) is construed liberally, and permits intervention when the applicant demonstrates: (1) a timely application; (2) a question of law or fact in common with the pending action; and (3) lack of undue delay to the action or prejudice to the rights of the original parties. *League of United*

*Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). Intel easily satisfies these requirements.

First, as discussed above, there is no doubt that this motion is timely at this early stage of the litigation. Second, there can be little question that common questions of law or fact are raised when the manufacturer of a product at issue seeks to intervene in a patent infringement action against its customers when the manufacturer's products are the subject of the infringement allegations. *Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006) (granting manufacturer permissive intervention in patent infringement case, finding common issues); *Lemelson v. Larami Corp.*, 212 U.S.P.Q. 598, 599 (S.D.N.Y. 1981) (same).[4] Because Intel designs and manufactures accused products that the customer defendants use in their computers, common questions include the defenses of non-infringement, invalidity, unenforceability, and license/patent exhaustion, as well as construction of disputed claim terms and discovery with respect to the patentee and Intel. *See Nikon*, 222 F.R.D. at 651 (granting manufacturer permissive intervention in patent infringement case, finding "identical" questions of law and fact).

Third, as discussed above, no present party would be prejudiced by allowing Intel to intervene given the early stage of this litigation and the common questions of law and fact. If anything, joining the manufacturer of products at issue will only facilitate discovery, promote judicial economy, and avoid potential multiple suits. Therefore, the Court should exercise its discretion and grant this motion to intervene under Rule 24(b).

---

[4] This factor of Rule 24(b) has been construed liberally and is a lower standard than that required under Rule 24(a). *In re Estelle*, 516 F.2d 480, 486 (5th Cir. 1975) ("[T]he Supreme Court has said that [Rule 24(b)] 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940))).

## CONCLUSION

For the foregoing reasons, Intel respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a) or as a matter of discretion under Rule 24(b).

September 29, 2008                    Respectfully submitted,

*/s/ Michael E. Jones*
Michael Edwin Jones
Potter Minton PC
110 North College, Suite 500
Tyler, Texas  75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846
Email:  mikejones@potterminton.com

Of Counsel:

David J. Burman *(pro hac vice pending)*
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington  98101-3099
Telephone:  (206) 359-8426
Facsimile:   (206) 359-9426
Email:  dburman@perkinscoie.com

Jonathan M. James *(pro hac vice pending)*
Perkins Coie Brown & Bain P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012
Telephone:  (602) 351-8440
Facsimile:  (602) 648-7032
Email:  jjames@perkinscoie.com

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 29, 2008.  Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ Michael E. Jones*

20336-1246/LEGAL14709508.1