**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**TYLER DIVISION**

| | |
|---|---|
| SAXON INNOVATIONS, LLC,<br><br>                       Plaintiff,<br><br>    v.<br><br>APPLE, INC., ET AL.,<br><br>                   Defendants. | Civil Action No. 6:08-CV-265-LED<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ALL CLAIMS OF U.S. PATENT NO. 5,235,635 ON GROUNDS OF INDEFINITENESS

**TABLE OF CONTENTS**

I.  Introduction ........................................................................................................... 1

II.  Questions Presented .............................................................................................. 2

III.  Statement of Undisputed Material Facts ............................................................... 2

IV.  Legal Standard ...................................................................................................... 3

    A.  Summary Judgment ......................................................................................... 3

    B.  Indefiniteness .................................................................................................. 3

V.  Factual Background .............................................................................................. 4

    A.  The Claimed Invention .................................................................................... 4

    B.  The Corresponding Aspects of the Specification ............................................. 6

VI.  Argument .............................................................................................................. 7

    A.  "Clock Detector 109" is not an Adequate Disclosure of Structure ................... 7

    B.  "Any Key Down Logic 105" is not an Adequate Disclosure of Structure. ........... 9

    C.  "Code Logic 103" is not an Adequate Disclosure of Structure. ......................... 11

VII.  Conclusion ......................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................3

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324 (Fed. Cir. 2006)........................................................................................9

*Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-CV-434 (TJW), 2009 WL 68875 ........................................................................................9

*Aristocrat Techs. Australia Pty Ltd. v. International Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008)..................................................................4

*Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374 (Fed. Cir. 1999) ..............................................................................................3

*Biomedino, LLC v. Waters Techs*, 490 F.3d 946 (Fed. Cir. 2007)...........1, 3, 4, 6, 8, 10, 12

*Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (Fed. Cir. 2009)...............1, 4, 8, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................3

*Finisar Corp. v. The DirecTV Group, Inc.*, 523 F.3d 1323 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 754 (2008).............................................4

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2002) ..................................................................................................8

*Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003)) .......................9, 10

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..........................................................................................3

*S3 Inc. v. NVIDIA Corp.*, 279 F.3d 1364 (Fed. Cir. 2001) ......................................9

*Sun Microsystems, Inc. v. Network Appliance, Inc.*, 591 F. Supp. 2d 1069 (N.D. Cal. 2008)..............................................................................8, 10

*TGIP, Inc. v. AT&T Corp.*, 512 F. Supp. 2d 727 (E.D. Tex. 2007)................................4

## FEDERAL STATUTES

35 U.S.C. § 112, ¶ 2 ................................................................................11

35 U.S.C. § 112, ¶ 6 ................................................................1, 2, 3, 8, 9

## RULES

Fed. R. Civ. P. 56(e)(2) ........................................................................................................1

Local Rule CV-7 ...................................................................................................................1

## MISCELLANEOUS

Declaration of Don Soderman Regarding U.S. Patent 5,235,635 .................8, 9, 10, 11, 12

Decl. of Noel R. Strader in support of Saxon Innovations, LLC's Claim
   Construction .................................................................................................7, 9, 12

IEEE STANDARD. DICTIONARY OF ELECTRICAL & ELECTRONICS. TERMS
   196–97 (1993) ...........................................................................................8, 10

Joint Claim Construction and Prehearing Statement Pursuant to Local
   Patent Rule 4-3, (Document Number 213) .................................................5, 6, 7, 8, 9

*PR 4-5(a) Opening Brief on Claim Construction by Saxon Innovations,
   LLC,* (Document 227) ..............................................................................9

*Saxon Innovations, LLC v. Nokia Corp., et al.,* No. 6:07-cv-00490-LED-
   JDL, Rep. and Recommendation of U.S. Magistrate Judge at 8 (E.D.
   Tex. July 30, 2009) ...................................................................................1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules CV-7 and CV-56, Defendants Gateway, Inc., Acer America Corp., Acer Inc., Hewlett-Packard Company, Dell, Inc., and Asus Computer International, Inc., bring this motion for summary judgment on the grounds that all claims of U.S. Patent No. 5,235,635 ("the '635 patent") (attached as Exhibit A) are invalid as indefinite under 35 U.S.C. § 112, ¶ 6.

## I.      Introduction

The '635 patent is invalid because all claims contain at least one means-plus-function claim element for which the specification fails to disclose structure.  The patent laws (35 U.S.C. §§ 1, *et seq.*) permit patentees to draft vague claim limitations using a broad means-plus-function language.  *See* 35 U.S.C. § 112, ¶ 6.  However, in order to do so, the patentee must adequately disclose, in the specification, specific structure that performs the claimed function.  *Id.*; *Biomedino, LLC v. Waters Techs*, 490 F.3d 946, 948 (Fed. Cir. 2007).  The requirement of adequate disclosure is the price that must be paid for being allowed to claim using means-plus-function elements.  *Biomedino*, 490 F.3d at 948.

It is undisputed that the '635 patent recites multiple means-plus-function claim limitations pursuant to 35 U.S.C. § 112, ¶ 6.  For the functions claimed, however, the specification discloses no structure.  The specification discloses only three boxes, denoted as performing the functions, without any reference to particular structures that would be known to those of ordinary skill in the art.  By identifying only "black boxes" as the corresponding "structure," the patentee has improperly attempted to capture every possible means for performing the claimed functions—a result § 112, ¶ 6, is intended to prevent.  *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009).  This violates the bargain struck by the patentee in reciting these limitations in means-plus-function form, and affirming validity of these limitations would leave skilled artisans unable to determine whether a device infringes the '635 patent.  As such, all claims of the '635 patent are invalid for indefiniteness as a matter of law because they claim in purely functional terms.[1]

---

[1] The issues raised in this motion are similar to another Saxon patent, U.S. Patent 5,247,621 previously asserted by Saxon, which this Court found to have insufficient structure disclosed in the specification to support a means-plus-function claim.  *See Saxon Innovations, LLC v. Nokia Corp., et al.,* No. 6:07-cv-00490-LED-JDL, Rep. and Recommendation of U.S. Magistrate Judge at 8 (E.D. Tex. July 30, 2009) ("In

## II.     Questions Presented

1.  Is the patentee's use of  "clock detector 109," without further description in the specification, sufficient to particularly point out and distinctly claim "clock detecting means," as required by § 112?

2.  Is the patentee's use of "any key down logic 105," without further description in the specification, sufficient to particularly point out and distinctly claim "output means," as required by § 112?

3.  Is the patentee's use of "code logic 103," without further description in the specification, sufficient to particularly point out and distinctly claim "means for generating," as required by § 112?

## III.    Statement of Undisputed Material Facts

Claim 1 of the '635 Patent is an independent claim that includes the following claim elements that are governed by 35 U.S.C. §112, ¶6:

> **clock detecting means** for detecting the presence and absence of said clock signals and providing a second output signal responsive to detecting the absence of said clock signals;

> **output means** . . . responsive to said first and second output signals, for providing an activation signal to cause said external clock source to provide said telephone apparatus with said clock signals; and

Claim 12 of the '635 Patent is an independent claim that includes the following claim elements that are governed by 35 U.S.C. §112, ¶6:

> **clock detecting means** for detecting the presence and absence of said clock signals and providing a second output signal responsive to detecting the absence of said clock signals;

> **output means** . . . responsive to said first and second output signals, for providing an activation signal to cause said external clock source to provide said keypad monitor with said clock signals

Claim 13 of the '635 Patent is a dependent claim of the '635 Patent that includes the following additional claim element that is governed by U.S.C. §112, ¶6:

> **means for generating** a unique multiple-bit code identifying which of said plurality of switches has a changed condition in response to receiving said clock signals.

---

this case, the structure described by Saxon is not disclosed in the patent specification, and thus the patentee has not satisfied the *quid pro quo* of § 112, ¶ 6.").

The only portion of the specification corresponding to the "clock detecting means" is the object labeled "clock detector 109" found in Figure 3 of the '635 Patent. The only portion of the specification corresponding to the "output means" is the object labeled "any key down logic 105" found in Figure 3 of the '635 Patent. The only portion of the specification corresponding to the "means for generating" is the object labeled "code logic 103" found in Figure 3 of the '635 Patent.

## IV.   Legal Standard

### A.   Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). To defeat a summary judgment motion, the opposing party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the opposing party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2); *Matsushita Elec.*, 475 U.S. at 587. A determination that a patent claim is invalid for failure to meet the definiteness requirements of 35 U.S.C. § 112, is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims; and indefiniteness, therefore, like claim construction, is a question of law that is proper subject matter for a motion for summary judgment. *Biomedino*, 490 F.3d at 949; *Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed. Cir. 1999).

### B.   Indefiniteness

Special definiteness rules apply if a patentee chooses to draft claims in means-plus-function form: In addition to properly claiming the function, the patentee "must describe in the patent specification some structure which performs the specified function." *Biomedino* 490 F.3d at 948. The party asserting the patent may not simply point to *some* structure in the specification that theoretically *could* perform the function; rather, there must be clear disclosure in the specification linking a *particular* structure to the claimed function. *Id*. at 950. "If the specification does not contain an adequate disclosure of structure that corresponds to the claimed function, the patentee will have 'failed to particularly point out and distinctly claim the invention as required by the

second paragraph of § 112.'"  *Blackboard*, 574 F.3d at 1382 (*citing Biomedino*, 490 F.3d at 951.)

In determining whether the specification adequately discloses structure, the Court must consider "whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure" based on his or her own knowledge or skill.  *Biomedino*, 490 F.3d at 951 (holding that a box labeled "Control" and the statement "controlled automatically by known differential pressure, valving and control equipment" was insufficient structure for a claimed "control means"); *see also Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337–38 (Fed. Cir. 2008) (holding that a "standard microprocessor" with "appropriate programming" was insufficient structure for a "game control means").  Thus, a specification fails to disclose sufficient structure when it merely restates the function recited in the claim.  *Finisar Corp. v. The DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 754 (2008) (holding that recitation in the specification of the function, without any portion of the algorithm used, was insufficient structure to support "database editing means").  Indeed, the specification must show one skilled in the art how the claimed function is implemented—*i.e.*, the specific structure that performs that function.  *TGIP, Inc. v. AT&T Corp.*, 512 F. Supp. 2d 727, 736 (E.D. Tex. 2007).

"The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents *is to avoid pure functional claiming*."  *Blackboard*, 574 F.3d at 1383 (quoting *Aristocrat Techs.*, 521 F.3d at 1333) (emphasis added).  Without an adequate recitation of structure, the patentee could capture every possible means for achieving the recited function—a result that is prohibited by §112, ¶ 6, because it constitutes pure functional claiming.  *Blackboard*, 574 F.3d at 1385.

## V.      Factual Background

### A.      The Claimed Invention

The '635 patent generally relates to a keypad monitor used in telephones that is "activated responsive to keypad activity."  '635 Patent at col.1 l.7–9.  The disclosed keypad monitor is activated in response to receiving clock signals from an external clock

source and is deactivated in the absence of those clock signals.  *Id.* at col.1 l.11–13. Deactivating the telephone allows the telephone to reduce power consumption and, thereby, comply with its power consumption requirements.  *Id.* at col.1 l.50–55.

The '635 patent has two independent claims (1 and 12), and both are directed to reactivating a telephone system.  Among other things, the claims attempt to describe a system that reactivates a telephone when a key on the keypad is pressed and a "clock detecting means" detects the absence of clock signals.  When both of these conditions are met, an "output means" sends an activation signal to an external clock source causing the external clock source to provide the system with clock signals (causing reactivation).  *Id.* at col.2 l.35–49.  Both of these independent claims include means-plus-function limitations, which have the following (undisputed[2]) claimed functions:

| Recited Means[3] | Recited Function |
|---|---|
| clock detection means | detecting the presence and absence of said clock signals and providing a second output signal responsive to detecting the absence of said clock signals |
| output means | responsive to said first and second output signals, providing an activation signal to cause said external clock source to provide said telephone apparatus [keypad monitor] with said clock signals[4] |

In addition, dependent claim 13 of the '635 patent contains an additional means-plus-function claim element, which has the following (undisputed) claimed function:

| Recited Means[5] | Recited Function |
|---|---|
| means for generating | generating a unique multiple-bit code identifying which of said plurality of switches has a changed condition in response to receiving said clock signals |

---

[2] In the parties Joint Claim Construction and Prehearing Statement Pursuant to Local Patent Rule 4-3, Document Number 213, Exhibit A, pp. 17, 20 (hereinafter "Joint Statement") (Attached as Exhibit D), the defendants and plaintiffs recitation of the function for "output means" differs.  In the interest of clarifying the issues before the Court with respect to these terms, the defendants accept the plaintiff's recitation of the function for purposes of this motion.

[3] This table is a summary from the information submitted Exhibit A of the Joint Statement, pp. 17, 20.

[4] The function associated with "output means" has a slight variation between claims 1 and 12, denoted by the bracketed phrase.

[5] Joint Statement at 21.

Importantly, the specification fails to adequately disclose the "structures" associated with these functions.

## B.     The Corresponding Aspects of the Specification

To construe a claim written in means-plus-function form pursuant to 35 U.S.C. § 112, ¶ 6, the Court must first identify the claimed function and then look to the specification to identify the corresponding structure for performing that function. *Biomedino*, 490 F.3d at 950.   Saxon contends that the following disclosures constitute "structure" for the claimed functions:

| Recited Means[6] | Corresponding Identification |
|---|---|
| clock detecting means | Clock Detector 109 |
| output means | Any Key Down Logic 105 |
| means for generating | Code Logic 103 |

The "clock detector 109," "any key down logic 105," and "code logic 103" are depicted as boxes in Figure 3—the only figure in which any of the three appear.  The parties agree that no other disclosure of "structure" for these three limitations appears in the specification.   Joint Statement at 17, 20, and 21.   Importantly, the text of the specification provides no further description of the internal components or circuitry that allow "clock detector 109," "any key down logic 105," and "code logic 103" to perform the claimed functions.  The specification merely states that "clock detector 109" includes one input and one output ('635 Patent at col. 7 l.26–35, col.10 l.18–22) and "any key down logic 105" includes two inputs and one output ('635 Patent at col.7 l.35–46, col.10 l.22–24).  All that is disclosed regarding "code logic 103" is that it "generates the six-bit keycode indicating which one of the keypad switches is closed . . . in a manner well-known in the art."  '635 Patent col.7 l.52-56.

The corresponding disclosures for these three limitations have one thing in common—none discloses a specific structure underlying the attached labels.  In addition, none of the three disclosures identify an electronic structure whose operation was well understood in the art, nor do they disclose how such structures could be built.

The plaintiff, it appears, agrees.   Indeed, in the parties' Joint Statement, the plaintiff identifies no item from the specification other than "clock detector 109," "any key down logic 105," and "code logic 103" - conceding that these comprise *the entire*

---

[6]  Joint Statement at 17, 18, and 21.

disclosure of "structure" for these elements.  *Joint Statement* at 17, 20, and 21.
Moreover, Saxon cites no extrinsic evidence of any kind in the Joint Statement.   In
addition, Saxon's expert on claim construction specifically states that "one of ordinary
skill in the art at the time of the invention would have understood the corresponding
structure" for the recited means to be, and only to be, "clock detector 109," "any key
down logic 105," and "code logic 103"-while neither identifying nor relying upon any
further description in either the intrinsic record or the identified extrinsic evidence.  Decl.
of Noel R. Strader in support of Saxon Innovations, LLC's Claim Construction
(hereinafter, "Strader Decl.") (Attached as Exhibit B) ¶¶ 26–28, 31–32.

Thus, the parties agree: "clock detector 109," "any key down logic 105," and
"code logic 103" comprise the entire disclosure corresponding to the means-plus-function
elements at issue.

## VI.    Argument

The claims of the '635 patent are indefinite, because each of the independent
claims contains at least one means-plus-function claim element for which the patentee
failed to disclose any identifiable structure.  That is, "clock detector 109," "any key down
logic 105," and code logic 103" are inadequate disclosures of structure as a matter of law.
First, by not disclosing the internal operation or the internal circuitry of these
components, the patentee impermissibly engaged in pure functional claiming.  Second, by
not disclosing the internal circuitry of these components, the patentee made it impossible
to determine if a particular device is identical or equivalent to what is claimed, such that
one of ordinary skill in the art would not be able to determine whether an accused device
infringes the '635 patent.

### A.    "Clock Detector 109" is not an Adequate Disclosure of Structure.

The only disclosure corresponding to "detecting the presence and absence of
clock signals and providing an output signal" is a "clock detector 109."   In Figure 3,
"clock detector 109" is disclosed as a black box, with no further description of the
internal structure of "clock detector 109" anywhere else in the patent.  '635 Patent at
col.7 l.26–39.  The label, "clock detector," itself provides no insight as to what structure
the patentee intended.   The label is merely a restatement of the claimed means (*i.e.*,
"clock detector" is substantively identical to "clock detecting means").  "Clock detector"

is not a term defined by any of the extrinsic evidence cited by either party in the Joint Statement.  *Cf.* IEEE STANDARD. DICTIONARY OF ELECTRICAL & ELECTRONICS. TERMS 196–97 (1993) (hereinafter, "IEEE STANDARD DICTIONARY") (attached as Exhibit G). Nor does the label refer to any well-known electronic component.  *See* Declaration of Don Soderman Regarding U.S. Patent 5,235,635 (hereinafter "Soderman Decl.") (attached as Exhibit C).

Without any limitation in the specification of what structures are identical or equivalent to a "clock detector," Saxon would be free to assert that the '635 patent captures <u>all</u> structures capable of performing the claimed function.  This would be pure functional claiming, which is insufficient, as a matter of law, under 35 U.S.C. §112, ¶ 6. *Blackboard*, 574 F.3d at 1385 (explaining that § 112, ¶ 6, "is intended to prevent such pure functional claiming").  Thus, both independent claims (and all claims depending on them) are indefinite for "fail[ing] to particularly point out and distinctly claim the invention as required by §112."  *Biomedino*, 490 F.3d. at 951.

The impossibility of determining infringement further illustrates the inadequacy of disclosure.  A "claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular [device] infringes or not." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1383–84 (Fed. Cir. 2002); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, 591 F. Supp. 2d 1069, 1078 (N.D. Cal. 2008).   Literal infringement of a means-plus-function claim limitation "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification."  *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006).  Here, without a description of the internal workings of "clock detector 109," there is no way for one of ordinary skill in the art to determine if a particular structure that "detected the presence and absence of clock signals" and "provided an output signal responsive to detecting the absence of clock signals" was identical or equivalent to "clock detector 109."  The skilled artisan would have no basis for which to start, let alone complete, such an inquiry.

The Federal Circuit has, in rare cases, excused a patentee's failure to disclose sufficient structure, if the structure that is disclosed is considered "well-known electronic

structure [that] performs a common electronic function." *S3 Inc. v. NVIDIA Corp.*, 279 F.3d 1364, 1371 (Fed. Cir. 2001); *Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-CV-434 (TJW), 2009 WL 68875, at *11 (characterizing the holding of *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003)).  But here, the patentee did not choose some well known structure.  The patentee simply drew a box and labeled it with the rewording of the function.  "Clock detector" is not some well known structure.  *See* Soderman Decl. at ¶6.  Nor has Saxon ever asserted that it is.  In the Joint Statement, Saxon stated only that the corresponding structure was "clock detector 109," and cited no extrinsic evidence that might illustrate a "well known" nature.  In the report of Saxon's expert in support of its claim construction position, Dr. Strader states only that "clock detector 109" is the corresponding structure, making no assertion that such a structure is well known and citing no extrinsic evidence that might support such an inference.  Strader Decl. at ¶ 28.  In the "PR 4-5(a) Opening Brief on Claim Construction by Saxon Innovations, LLC," Saxon again avoids asserting that "clock detectors" are somehow well known in the art," instead stating that "[p]ersons of ordinary skill thus understand that clock detector 109 is the circuitry that performs the claimed detecting function."  *PR 4-5(a) Opening Brief on Claim Construction by Saxon Innovations, LLC,* Document 227, at 10 (attached as Exhibit E).  The defendants do not dispute that the patentee intended "clock detector 109" to be the "structure" associated with the detecting function.  The defendants simply point out that by doing so the patentee was improperly attempting to capture every possible means of performing the detecting function.

Saxon is not allowed to claim ownership of every structure capable of performing the claimed function in the clock detecting means limitation.  The specification must provide some real structure limiting the means, and the '635 patent must provide some way for one of ordinary skill in the art to determine if an accused device infringes its claims.  As neither of these conditions for patentability is satisfied, all claims are indefinite and invalid under § 112.

### B. "Any Key Down Logic 105" is not an Adequate Disclosure of Structure.

The only disclosure corresponding to "providing an activation signal to cause said external clock source to provide said telephone apparatus with said clock signals" (responsive to said first and second output signals) is "any key down logic 105."  '635

Patent at col.7 l.35–46.  Like "clock detector 109," "any key down logic 105" is disclosed as a black box in Figure 3.  It appears in no other figure, and the specification provides no further description of its internal composition or structure.  *Id*.  Nor is the label "any key down logic" meaningful.  It does not refer to a well-known electronic component defined in standard dictionaries; instead it is a restatement of the component's input.  *See* Soderman Decl. at ¶6; *cf*. IEEE STD. DICTIONARY 92 (containing no definition of "any key down logic").  Because the "specification does not contain an adequate disclosure of structure that corresponds to the claimed function," the patentee has "failed to particularly point out and distinctly claim the invention as required by the second paragraph of § 112," and the output means element is indefinite.  *Blackboard*, 574 F.3d at 1382; *Biomedino*, 490 F.3d at 951.

Additionally, the specification is not clear as to the scope of the "output means" limitation.  "A claim is indefinite under section 112, ¶ 2 when 'its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular [device] infringes or not.'"  *Sun Microsystems*, 591 F. Supp. 2d at 1078 (citing *Geneva Pharms.*, 349 F.3d at 1383–84).  As noted previously, the patent must provide some meaningful way to determine whether an accused component infringes.  *Blackboard*, 574 F.3d at 1385 (the patentee "cannot avoid providing specificity as to structure on a means-plus-function limitation simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function; to allow that form of claiming would allow the patentee to claim all possible means of achieving a function").  For a means-plus-function element, this means providing an adequate disclosure of the scope of infringing structures.

Here, the patentee has given no guidance as to that scope.  According to the specification, the activation signal provided by the output means "causes the output 52 of the digital interface 44 to be pulled low momentarily to cause the digital controller to provide the clock signals from its clock source 15."  '635 Patent at col.7 l.41–46.  The specification describes nothing about the output signal (for example its shape or whether it is periodic) that provides any insight as to the type of structure that could have created it.  Thus, one of ordinary skill in the art has no way of determining what structure was intended as "any key down logic 105."

Nor is "any key down logic 105" some well known electronic component. Soderman Decl. ¶ 6.  As with "clock detector 109," Saxon has does not argue that "any key down logic 105" was somehow a well known electrical component (*e.g.* the Parties' Joint Statement, the Declaration of its expert, its Claim Construction brief).  Instead, Saxon merely maintains that one of ordinary skill in the art would recognize that "any key down logic 105" was what the patentee disclosed as providing the activation signal. The defendants agree, the patentee intended "any key down logic 105" to be the output means.  But the patentee's failure to disclose what "any key down logic 105" actually is renders the claims invalid, because a person of ordinary skill in the art would unable to determine whether a potentially infringing device contained identical or equivalent structure.

> **C.   "Code Logic 103" is not an Adequate Disclosure of Structure.**

The only disclosure corresponding to "generating a unique multiple-bit code identifying which of said plurality of switches has a changed condition in response to receiving clock signals" is a "code logic 103."  Like "clock detector 109" and "any key down logic 105," "code logic 103" is illustrated as a black box in Figure 3.  It appears in no other figure, and the specification does not describe its internal operation.  '635 Patent at col.7 l.47–56, col.9 l.60–63.  Again, the label, "code logic" is meaningless, providing no insight as to what might be contained within.  The specification nakedly asserts that the claimed function can be performed using known methods (and presumably known equipment):  code logic 103 "generate[s] the unique 6-bit code indicating which keypad switch is closed in a manner well-known in the art" (*id.* at col.9 l.60–63) and the "generation of the six-bit key code is performed in a manner well known in the art" (*id.* at col.7 l.55–56).  In *Biomedino*, the Federal Circuit squarely answered "No" to the question of "is sufficient corresponding structure disclosed when the specification simply recites that a claimed function can be performed by known methods or using known equipment where prior art of record and the testimony of experts suggest that known methods and equipment exist?"  *Biomedino*, 490 F.3d at 951–53.  As such, the "means for generating" limitation is indefinite for failing to particularly point out and distinctly claim the invention as required by §112.

Like the other means-plus-function elements at issue, it is impossible for one of ordinary skill to determine whether a device infringes the "means for generating" limitation.   The specification of the '635 patent fails to disclose any information regarding the operation of "code logic 103" from which one of ordinary skill in the art could begin or complete the inquiry of whether an accused structure was structurally equivalent to "code logic 103."   Nor is "code logic 103" some well known electronic structure performing a known function.  Soderman Decl. at ¶6.  Defendants again point out that, if Saxon intended to assert that it was, it has had ample opportunity to do so. The most Saxon has asserted is that "one of ordinary skill in the art at the time of the invention would have understood the corresponding structure for the 'means for generating a unique multiple-bit code' to be the Code Logic 103 and equivalents thereof." Strader Decl. at ¶ 32.  Again, the defendants agree that the patentee intended "code logic 103" to be the "means for generating."   However, one of ordinary skill in the art would be unable to determine what "code logic 103" was, thus would be unable to determine if a potentially infringing device was identical or equivalent to what was claimed – rendering claim 13 invalid as indefinite.

## VII.    Conclusion

The '635 patent does not adequately disclose the structure corresponding to three means-plus-function claim elements.  The lack of disclosure is an impermissible attempt to capture all possible means for performing the claimed function and prevents those of ordinary skill in the art from determining whether an accused device infringes the patent. Accordingly, the patentee failed to particularly point out and distinctly claim the invention as required by §112, rendering all claims of the '635 patent invalid.

For the foregoing reasons, the undersigned respectfully request that the Court grant this motion for summary judgment of invalidity of all claims of U.S. Patent No. 5,235,635 on the grounds of indefiniteness.

DATED: December 18, 2009                    Respectfully submitted,

                                            /s/ *Winstol D. Carter, Jr.*
                                            Winstol D. Carter, Jr.
                                            Rick L. Rambo

James A. Glenn, Jr.
MORGAN LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001
Email: wcarter@morganlewis.com
Email: rrambo@morganlewis.com
Email: jglenn@morganlewis.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY


/s/ *Eric H. Findlay*
Eric H. Findlay
FINDLAY CRAFT
6760 Old Jacksonville Hwy., Suite 101
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com

W. Bryan Farney
Bryan D. Atkinson
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, Texas 78701
Telephone: (512)-394-3000
Facsimile: (512) 394-3001
Email: bryan.atkinson@dechert.com
Email: bryan.farney@dechert.com

Jonathan D. Baker
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, California 94040-1499
Telephone: (650) 813-4800
Facsimile: (650) 813-4848
Email: jonathan.baker@dechert.com

Attorneys for Defendants
GATEWAY, INC., ACER AMERICA
CORP., and ACER INC.

64051598                                   PAGE 13

/s/ *Michael J. Newton*
Michael J. Newton
Stacy G. White
ALSTON & BIRD
2200 Ross Avenue, Suite 3601
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: mike.newton@alston.com
Email: stacey.white@alston.com
Email: jason.cook@alston.com

Kamran Jivani
Byron R. Holz
ALSTON & BIRD
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: 404-881-4631
Fax: 404-253-8831
Email: kamran.jivani@alston.com
Email: byron.holz@alston.com

Attorneys for Defendant
DELL, INC.

/s/ *Scott E. Stevens*
Scott E. Stevens
Gregory P. Love
Darrell G. Dotson
STEVENS LOVE
P.O. Box 3427
Longview, Texas 75606
Telephone: (903) 753-6760
Facsimile: (903) 753-6761
Email: scott@seslawfirm.com
Email: greg@seslawfirm.com
Email: darrell@stevenslove.com

Patrick D. Benedicto
OKAMOTO & BENEDICTO LLP
1734 North First Street, Suite 270
San Jose, California 95112
Telephone: (408) 436-2112
Facsimile: (408) 408-436-2114
Email: Patrick@obllp.com
Attorneys for Defendant

ASUS COMPUTER INTERNATIONAL, INC.

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on December 18, 2009.

*/s/ Rick L. Rambo*
Rick L. Rambo